**IN THE DISTRICT COURT OF LEFLORE COUNTY**
**STATE OF OKLAHOMA**



CENTRAL NATIONAL BANK,
             **Plaintiff,**

-vs-
                                     Case No. CJ-2017-242

ADA ELAINE REED,
**STATE FARM FIRE and CASUALTY COMPANY,**
             **Defendant.**

## PETITION FOR FORECLOSURE OF REAL ESTATE MORTGAGE

Comes now the above named plaintiff, CENTRAL NATIONAL BANK, and for its cause of action against the defendant, ADA ELAINE REED, alleges and states as follows:

(1)    That plaintiff herein was at all times hereinafter mentioned and now is a corporation, organized and existing under the laws of the United States of America, with its principal office in Poteau, Oklahoma.

(2)    That on or about the 3RD day of July, 2016, the defendant, ADA ELAINE REED, did for a good and valuable consideration, make, execute and deliver to CENTRAL NATIONAL BANK, plaintiff herein, her written promissory note, for value received, in the principal sum of $21,255.48, plus interest thereon at the rate of 4.970% per annum until paid, said amount payable in 180 monthly payments of $167.79 each, first payment to be made on or before the 2nd day of August, 2016, and each month thereafter until fully paid and satisfied. The Note provides for late charges if the payment is more than ten (10) days late, in the amount of 5% of the unpaid portion of payment or $16.60 which ever is greater. Said note further provides for attorney fees not in excess of 15% of the unpaid debt after default.

1



EXHIBIT
1

A true copy of said note, with the endorsements thereon, is attached hereto, marked Exhibit "A" and made a part of this petition.

(3)    That at the same time and place and as a part and parcel of the same transaction, for the purpose of securing the payment of said promissory note, the said defendant made, executed and delivered unto the said plaintiff a certain real estate mortgage in writing, thereby granting, selling and conveying unto the said plaintiff, all the following described real estate situated in LeFlore County, Oklahoma, to-wit:

PART OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 9 NORTH, RANGE 26 EAST, INDIAN BASE AND MERIDIAN, LEFLORE COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 24; THENCE SOUTH ALONG SECTION LINE A DISTANCE OF 300 FEET; THENCE EAST 100 FEET; THENCE NORTH 300 FEET; THENCE WEST A DISTANCE OF 100 FEET TO THE POINT OF BEGINNING.

which said mortgage was duly signed and acknowledged by defendant, the required mortgage tax was duly paid, and said mortgage was duly recorded in Book 1941 at Page 318 in the Office of the County Clerk of LeFlore County, Oklahoma, a copy of which mortgage is attached hereto, marked Exhibit "B" and made a part hereof by this reference.

(4)    That by the terms and conditions of said mortgage, as fully set out therein, it is specifically provided, that if said sum or sums of money or any part thereof, or any interest thereon is not paid when the same is due, and if the taxes and assessments of every nature

which are or may be assessed and levied against said premises or any part thereof are not paid

when the same are by law made due and payable, then the whole of said sum or sums, and

the interest thereon, shall become due and payable without notice and said mortgagees shall

be entitled to the immediate possession of said premises, together with all the rents, issues

and profits thereof. Defendant is in default as to the note and mortgage, not having made any

payments of principal or interest since November 2, 2016, although due demands have been

made upon said defendant, at which time the principle due was $20,092.72. There is

accrued interest from that date to December 7, 2017, in the amount of $1,113.51, late charges

in the amount of $274.87 and escrow shortage in the amount of $1,533.39, for a total amount

due and owing in the sum of $23,014.49.

(5)    Plaintiff further states that the conditions of said mortgage and of said note

have been broken and that as of December 7, 2017, there became due and payable to

plaintiff according to said mortgage and contract aforesaid, the sum of $23,014.49, with

interest at the rate of 4.97% per annum, until paid; that the same has not been paid; that the

plaintiff has demanded of defendant that the defendant pay the same; that said defendant has

failed, refused and neglected to do so.

(6)    Plaintiff further alleges that by reason of the premises and by the default of the

defendant to make payments as they matured according to said mortgage, the conditions of

said mortgage have been broken and the whole amount of the indebtedness thereby secured

has matured, and is now due and payable, together with all the interest thereon agreed to be

paid by said defendant, as well as a reasonable attorney fee and their expenses in bringing this suit, which is due and payable upon the filing of this suit as stipulated and specified in said mortgage; that therefore, plaintiff is entitled to the foreclosure of the mortgage on said premises, and to have the same sold to satisfy said indebtedness with appraisement, and the plaintiff asks that the case proceed with an appraisement.

The Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is named as Defendant herein in regard to that certain Homeowners Policy No. 36-BO-B238-8. The home burned and was a total loss in July 2016. The Plaintiff respectfully urges the Court to determine that said Defendant, STATE FARM FIRE AND CASUALTY COMPANY, must honor their policy and remit to the Plaintiff the amount sued for in regard to the property that is the subject of this action. A copy of said policy is attached hereto and made a part hereof as Exhibit "C", showing the Plaintiff as the insured mortgagee. By letter dated November 29, 2017, of the Defendant, STATE FARM FIRE AND CASUALTY COMPANY, attached hereto and made a part hereof as Exhibit "D", denied providing coverage under the policy for the loss covered by the Plaintiff's Mortgage, giving rise to this cause of action.

**WHEREFORE,** premises considered, plaintiff prays judgment against the defendant, ADA ELAINE REED, and the Defendant, STATE FARM FIRE AND CASUALTY COMPANY, for the sum of $23,014.49, plus interest thereon at the rate of 4.970% per annum from December 7, 2017, said interest accruing daily from that date in the sum of $3.13 until paid; for an attorney fee in the amount of $2,500.00 and for the costs of this

4

action.  In the event the Defendant STATE FARM FIRE AND CASUALTY COMPANY, deducts the value of the real property from their coverage, Plaintiff prays for judgment foreclosing the lien of said plaintiff upon said property, mentioned hereinabove, and forever barring said defendant from any lien, estate, or interest in or to title thereto; and that said mortgaged premises be ordered to be sold to satisfy the said judgment, said sale to be with appraisement, and for such other and further relief as may be deemed proper by the court.

HAMILTON, WARREN, BOVOS
& ADAMS
Attorneys for Plaintiff
P.O. Box 660
Poteau, OK 74953
Phone: (918) 647-9171
By _____
     DEAN E. WARREN

STATE OF OKLAHOMA    )
                     ) SS.
COUNTY OF LEFLORE    )

DEAN E. WARREN, of lawful age, after being duly sworn, states upon oath that she has read the above and foregoing petition, and completely understands the same and the matters and facts therein set forth are true and correct.

_____
DEAN E. WARREN

Subscribed and sworn to before me this 15th day of Dec, 20 17.

(SEAL)

_____
NOTARY PUBLIC    #80013195

My Commission Expires:
09-03-2020 .

5

3001172

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 3001172 | ADA ELAINE REED | 406368 | 07/03/15 | 446295 |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $21,255.48 | 26 Week T-Bill Rate plus 2.500% | 4.970% | 07/02/30 | Consumer |
| | | Creditor Use Only | | |

## PROMISSORY NOTE AND TRUTH-IN-LENDING DISCLOSURES
(Consumer - Closed End)

**DATE AND PARTIES.** The date of this Promissory Note and Truth-in-Lending Disclosures (Note) is July 3, 2015. The parties and their addresses are:

**LENDER:**
THE CENTRAL NATIONAL BANK POTEAU, INC.
802 N Pocola Boulevard
Pocola, OK 74902
Telephone: (918) 436-2471

**BORROWER:**
ADA ELAINE REED
2003 KARL ST
POCOLA, OK 74902-3833

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

    A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

    B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

    C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

    D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

    E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

    F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

    G. **Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

2. **FEDERAL TRUTH-IN-LENDING DISCLOSURES.**



EXHIBIT
"A"



| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate.<br>5.301% | FINANCE CHARGE<br>The dollar amount the credit will cost me.<br>$9,398.72 | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf.<br>$20,803.48 | TOTAL OF PAYMENTS<br>The amount I will have paid when I have made all scheduled payments.<br>$30,202.20 |
|---|---|---|---|

## INTEREST RATE AND PAYMENT SUMMARY

| | INTRODUCTORY Rate & Monthly Payment (for first 48 months) | MAXIMUM during FIRST FIVE YEARS (07/02/2019) | MAXIMUM EVER (as early as 07/02/2028) |
|---|---|---|---|
| Interest Rate | 4.970% | 6.500% | 10.970% |
| Principal + Interest Payment | $167.79 | $181.08 | $201.04 |
| Estimated Taxes + Insurance (Escrow) | $127.08 | $127.08 | $127.08 |
| Total Estimated Monthly Payment | $294.87 | $308.16 | $328.12 |

No Guarantee to Refinance. There is no guarantee that you will be able to refinance to lower your rate and payments.

Variable Rate. My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

Security. I am giving a security interest in:

1 - 4 Family Dwelling

My deposit accounts and other rights I may have to the payment of money from you.

Filing Fees. Recording Fee - Mortgage: $25.00. Recording Fee - Releases: $15.00. City/County Tax Stamps Fee - Mortgage: $26.26.

Late Charge. If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $16.80, whichever is greater.

Required Deposit. The annual percentage rate does not take into account my required deposit.

Prepayment. If I pay off early, I will not have to pay a minimum finance charge.

Assumption. Someone buying the Property securing the obligation may, subject to conditions, be allowed to assume the remainder of the obligation on the original terms.

Contract Documents. I will see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $21,255.48 (Principal) plus interest from July 3, 2015 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 4.970 percent (Interest Rate) until July 2, 2018, after which time it may change as described in the Variable Rate subsection.

    **A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

    **B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

    **C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Oklahoma Uniform Consumer Credit Code (14A OSA §§ 1-101 et, seq.).

    **D. Accrual.** Interest accrues using an Actual/365 days counting method.

    **E. Variable Rate.** The Interest Rate may change during the term of this transaction.

        **(1) Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the auction average of short term U.S. government bills with a 26 week maturity.

        The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

        **(2) Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change July 2, 2018 and every 36 months thereafter.

        **(3) Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 2.500 percent. The result of this calculation will be rounded to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Notice of Change.** You will deliver or mail to me a notice of any changes in my interest rate and the amount of my scheduled payment.

(5) **Limitations.** The interest Rate changes are subject to the following limitations:

(a) **Periodic.** The interest Rate will never increase or decrease on any single Change Date by more than 1.500 percent.

(b) **Lifetime.** The interest Rate will never be greater than 10.970 percent or less than 4.970 percent.

(6) **Effect Of Variable Rate.** A change in the interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $16.50, whichever is greater. I will pay this late charge promptly but only once for each late payment.

**7. PAYMENT.** I agree to pay this Note in 180 payments. A payment of $167.79 will be due August 2, 2015, and on the 2nd day of each month thereafter. I will make 48 scheduled payments of this amount. The scheduled payment amount may then change every 36 payments thereafter. Changes in the interest Rate will not affect the scheduled payment amount during these periods. With each scheduled payment change the payment amount will be adjusted to reflect changes in the interest Rate during the remaining term of this Note. In addition, changes to the scheduled payment amounts are subject to changes in the interest Rate as described in the Variable Rate subsection of this Note. A final payment of the entire unpaid balance of Principal and interest will be due July 2, 2030.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and finance charges. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. RIGHT TO REFINANCE.** If any scheduled payment is more than twice as large as the average of earlier scheduled payments, I have the right to refinance the amount of such payment at the time it is due without penalty, as provided for by state law. The terms of the refinancing shall be no less favorable than the terms of the original transaction. This section does not apply if the payment schedule is adjusted because of my seasonal or irregular income.

**9. PAYMENT SERVICING REQUIREMENTS.** Payments can be made at any Central National Bank location in Poteau, Pocola, Panama, Heavener, or Stigler, Oklahoma, or mailed to Central National Bank, P O Box 340, Poteau, OK 74953-0340. Payments received after 2:00 p.m. (the cut-off time) will be posted the next business day.

**10. PREPAYMENT.** I may prepay this Note in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**11. LOAN PURPOSE.** This is a consumer-purpose loan transaction.

**12. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Mortgage - 2003 KARL ST, POCOLA, OK 74902-3833 | ADA ELAINE REED | July 3, 2015 |

**13. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**14. ASSUMPTIONS.** Subject to conditions and your written consent, someone buying the Property may be allowed to assume this Note. Without written consent, you may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable. An assumption fee may be assessed if I request, and you agree, to transfer some or all of the Property to another party.

ADA ELAINE REED
Oklahoma Promissory Note and Truth-in-Lending Disclosures
OK24SKEISMAN00000000009482050N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 

Page 3

**15. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**16. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due. This remedy is subject to my limited right to cure certain defaults and to receive any notice informing me of such a right under 46 OSA 44.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate, after providing me with the required notice and 10 days to comply.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**17. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees not in excess of 15 percent of the unpaid debt after default and referral to an attorney who is not your salaried employee. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be accrued by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**18. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**19. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**20. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

**B. Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**C. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**21. APPLICABLE LAW.** This Note is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**A. Uniform Consumer Credit Code Applies.** I agree that this Loan is subject to 14A OSA § 1-101 through 14A OSA § 6-512 of the Uniform Consumer Credit Code, as amended.



**22. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**23. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**24. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**25. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**26. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**27. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**28. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_Ada Elaine Reed_      Date _7-3-15_
ADA ELAINE REED

LENDER:

The Central National Bank Poteau, Inc.

By _Sherry Keisman_      Date _7-3-15_
Sherry Keisman/Senior Vice President

Loan origination organization Central National Bank
NMLS ID 421861
Loan originator Sherry Keisman
NMLS ID 446295

**APPENDIX: FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid, these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Homeowner's Insurance Reserves.** A(n) Homeowner's Insurance Reserves fee of $236.84 payable from the loan proceeds.
**Property Taxes.** A(n) Property Taxes fee of $82.53 payable from the loan proceeds.
**Flood Monitoring Fee.** A(n) Flood Monitoring Fee fee of $2.00 payable from the loan proceeds.
**Underwriting.** A(n) Underwriting fee of $250.00 payable from the loan proceeds.
**Loan Origination.** A(n) Loan Origination fee of $200.00 payable from the loan proceeds.
**Recording - Releases.** A(n) Recording - Releases fee of $15.00 payable from the loan proceeds.
**Recording - Mortgage.** A(n) Recording - Mortgage fee of $25.00 payable from the loan proceeds.
**Pest Inspection.** A(n) Pest Inspection fee of $125.00 payable from the loan proceeds.
**Flood Certification.** A(n) Flood Certification fee of $12.00 payable from the loan proceeds.
**Environmental Inspection.** A(n) Environmental Inspection fee of $160.00 payable from the loan proceeds.
**Credit Report.** A(n) Credit Report fee of $6.00 payable from the loan proceeds.
**City/County Tax Stamps - Mortgage.** A(n) City/County Tax Stamps - Mortgage fee of $26.28 payable from the loan proceeds.
**Abstracting or title report.** A(n) Abstracting or title report fee of $190.00 payable from the loan proceeds.

24-9-26

STATE OF OKLAHOMA, COUNTY OF LEFLORE - I HEREBY CERTIFY THAT
THIS INSTRUMENT WAS FILED FOR RECORD IN MY OFFICE AT POTEAU

BOOK 1941
PAGE 318   JUL - 8 2015   AT 4:04 O'CLOCK

KELLI FORD, COUNTY CLERK, BY KC   DEPUTY

**4818**

Treasurer Endorsement,
I hereby certify that I received $21.26
and issued receipt No. 34299 therefore in
payment of mortgage tax on the within mortgage.
Dated this 1 day of July 2015.
SBS
Joe Wiles, LeFlore Co. Treas.

Space Above This Line For Recording Data

When recorded return to Loan Department, The Central National Bank Poteau, Inc., PO Box 340, Poteau, OK
74953-0340

## MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is July 3, 2015. The parties and their
addresses are:

**MORTGAGOR:**
   ADA ELAINE REED
   An unmarried individual
   2003 KARL ST
   POCOLA, OK 74902-3833

**LENDER:**
   THE CENTRAL NATIONAL BANK POTEAU, INC.
   Organized and existing under the laws of Oklahoma
   802 N Pocola Boulevard
   Pocola, OK 74902



EXHIBIT

"B"

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged,
and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor does
hereby grant, bargain, convey, sell and mortgage to Lender, with the power of sale, the following described
property:

PART OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF
SECTION 24, TOWNSHIP 9 NORTH, RANGE 26 EAST, INDIAN BASE AND MERIDIAN, LEFLORE COUNTY,
OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER
OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID
SECTION 24; THENCE SOUTH ALONG SECTION LINE A DISTANCE OF 300 FEET; THENCE EAST 100 FEET;
THENCE NORTH 300 FEET; THENCE WEST A DISTANCE OF 100 FEET TO THE POINT OF BEGINNING.

The property is located in Le Flore County at 2003 KARL ST, POCOLA, Oklahoma 74902-3833.

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN0000000000009462056N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials AER
Page 1

BOOK 1941 PAGE 318

20
3
25

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time and from time to time will not exceed $21,255.48. Any limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

  **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, dated July 3, 2015, from Mortgagor to Lender, with a loan amount of $21,255.48 and maturing on July 2, 2030.

  **B. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

  **A.** To make all payments when due and to perform or comply with all covenants.

  **B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

  **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. ASSUMPTIONS.** Subject to conditions and Lender's written consent, someone buying the Property may be allowed to assume this Security Instrument. Without written consent, Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS, INSPECTION, VALUATION AND APPRAISAL.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not



commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time and frequency for the purpose of inspecting, valuating, or appraising the Property. Lender will give Mortgagor notice at the time of or before an on-site inspection, valuation, or appraisal for on-going due diligence or otherwise specifying a reasonable purpose. Any inspection, valuation or appraisal of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection, valuation or appraisal for its own purpose, except as otherwise provided by law.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. DEFAULT.** Mortgagor will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. **Payments.** Mortgagor fails to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

C. **Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

D. **Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

E. **Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

F. **Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

G. **Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

K. **Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the ASSUMPTIONS section.

L. **Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000000009462056N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 
Page 3

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**13. REMEDIES.** On or after the occurrence of an Event of Default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of an Event of Default or anytime thereafter.

Lender has the power to sell the Property. If Lender invokes the power of sale, Lender will give notice in the manner required by applicable law to Mortgagor and any other persons prescribed by law. Lender will also publish the notice of sale, and the Property will be sold, as prescribed by applicable law. Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender.

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement, valuation, appraisal or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect, valuate, appraise and preserve the Property. Expenses include, but are not limited to, reasonable attorneys' fees not to exceed 15 percent of the unpaid debt after default and referral to an attorney not a salaried employee of Lender. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462056N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 
Page 4

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and will remain in full compliance with any applicable Environmental Law.

C. Mortgagor will immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

16. CONDEMNATION. Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

17. INSURANCE. Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld. All insurance policies and renewals shall include a standard "mortgage clause" (or "lender loss payable clause") endorsement that names Lender as "mortgagee" and "loss payee". If required by Lender, all insurance policies and renewals will also include an "additional insured" endorsement that names Lender as an "additional insured". If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

18. ESCROW FOR TAXES AND INSURANCE. As provided in a separate agreement, Mortgagor agrees to pay to Lender funds for taxes and insurance in escrow.

ADA ELAINE REED
Oklahoma Mortgage
OK/4BKEISMAN00000000009462066N

Wolters Kluwer Financial Services ©1996, 2016 Bankers Systems™

Initials 
Page 6

BOOK 1941 PAGE 322

**19. WAIVER OF APPRAISEMENT.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

**20. APPLICABLE LAW.** This Security Instrument is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**21. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**22. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**23. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**24. NOTICE, ADDITIONAL DOCUMENTS AND RECORDING FEES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any other, correct and complete information Lender requests to effectively mortgage or convey the Property. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

NOTICE TO MORTGAGOR: A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462056N


Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 
Page 6

BOOK 1941 PAGE 323

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**MORTGAGOR:**

_Ada Elaine Reed_   Date _7-3-15_
ADA ELAINE REED

**ACKNOWLEDGMENT.**

STATE OF OKLAHOMA, COUNTY OF LEFLORE  ss.

This instrument was acknowledged before me this 3rd day of July 2015 by ADA ELAINE REED , an unmarried individual.

My commission expires: 05-12-2018
Commission number: 14004467

_Christina Thomas_
(Notary Public)
X X

```
NOTARY PUBLIC State of OK
CHRISTINA THOMAS
Comm. # 14004467
Expires 05-12-2018
```

Loan origination organization Central National Bank
NMLS ID 421681
Loan originator Sherry Keisman
NMLS ID 446295

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN0000000000C9462056N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials _____
Page 7

BOOK 1941 PAGE 324

StateFarm

**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

4700 South Providence
Columbia, MO 65217-0001

Mortgagee

AT1                 000879  0048      O-26-9BBE-F65B      H  F
CENTRAL NATIONAL BANK
PO BOX 340
POTEAU OK  74953-0340

## DECLARATIONS PAGE

| Policy Number | 36-B0-B238-9 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | JUL 9 2015 | JUL 9 2016 |

The policy period begins and ends at 12:01 am
standard time at the residence premises.

Loan # 3001172
Named Insured

REED, ELAINE
2003 KARL ST
POCOLA OK  74902-3833

*3001172*

## HOMEOWNERS POLICY

Automatic Renewal - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Location of Residence Premises
Same as Insured's Address

| Coverages & Property | Limits of Liability | Inflation Coverage Index: 208.9 |
|---|---|---|
| **SECTION I** | | Deductibles - Section I |
| A  Dwelling | $    66,000 | All Losses    1%                          $1,000 MIN |
|    Dwelling Extension    up to | $     6,600 | |
| B  Personal Property | $    49,500 | |
| C  Loss of Use | Actual Loss Sustained | |
| **SECTION II** | | |
| L  Personal Liability (Each Occurrence) | $   100,000 | |
|    Damage to Property of Others | $       500 | In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply - refer to policy. |
| M  Medical Payments to Others (Each Person) | $     1,000 | |

| Loss Settlement Provision (See Policy)<br>A1 Replacement Cost - Similar Construction<br>B1 Limited Replacement Cost - Coverage B | Policy Premium<br>Discount Applied:<br>Home/Auto | $     1,497.00 |
|---|---|---|

Forms, Options, & Endorsements
Homeowners Policy                           FP-7945
Homeowners Policy Endorsement               FE-3512
Amendatory Endorsement                      FE-2340
Jewelry and Furs $1,500 Each                Option JF
   Article/$2,500 Aggregate
Increase Dwlg Up to $  13,200               Option ID
Ordinance/Law  10%/$   6,600                Option OL

EXHIBIT
"C"

Other limits and exclusions may apply - refer to your policy

Your policy consists of this page, any endorsements
and the policy form. Please keep these together.

FP-7011C          DEC PAGE ONLY  Continued on Reverse

2699   1 51  M                                           RANDY BITTLE
                                                         479-452-4088
N              Prepared   JUL 16 2015

**CONTINUED FROM FRONT SIDE**

Note: *For your protection, the law of your state requires the following to appear on this form:* **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

(01g2170b)

e1f0399g
Rev. 09-2005



State Farm Mutual Automobile Insurance Company

November 28, 2017

State Farm Insurance Companies
PO BOX 52258
Phoenix AZ 85072-2258

Elaine Reed
c/o McBee Law Firm
211 N. Church Street
Poteau, OK 74953

Re:   Insured:        Elaine Reed
      Claim Number:   36-930X-740
      Date of Loss:   July 24, 2016

Dear Ms. Reed:

State Farm Fire and Casualty Company has completed its review of your claim. We have concluded, after reviewing your Examinations Under Oath, documents submitted and other information obtained during the course of our investigation there is no coverage for your loss of July 24, 2016. Accordingly, we are denying your claim. We are also declaring your policy void as of the date of loss.

This denial of liability and voidance of your policy are predicated upon the violation of policy terms and conditions. The policy provisions in pertinent part are:

POLICY LANGUAGE:

   Coverage for the dwelling is provided under Homeowners Policy Form 7945.

   The pertinent policy language includes:

DECLARATIONS CONTINUED

   We agree to provide the insurance described in this policy:

                    * * *

   2. Based on your compliance with all applicable provisions of this policy; and

   3. In reliance on your statements in these Declarations.

                    * * *

EXHIBIT

"()"

Home Office, Bloomington, IL

## SECTION I – LOSSES INSURED

**COVERAGE A - DWELLING**
We insure for accidental direct physical loss to the property described in coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

**COVERAGE B - PERSONAL PROPERTY**
We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

   1.  Fire or lightning.

   12.  **Intentional Acts.**  If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

## SECTION I AND SECTION II – CONDITIONS

   3.  **Concealment or Fraud.**  This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

There is no coverage under this policy of insurance for the following reasons:

1. The fire damage to the insured property was not the result of an accidental direct physical loss for which the policy provides coverage.
2. You or some person insured under this policy intentionally caused the fire for the purpose of obtaining insurance benefits.
3. Your intentional misrepresentation and concealment as to the material facts and circumstances surrounding the loss;
4. Your intentional misrepresentation and concealment of information in the presentation of your claim including but not limited to your Sworn Statement in Proof of Loss.
5. Your intentional misrepresentation and concealment of the known cause of the fire.

By denying your claim and voiding your policy on the grounds set forth above, State Farm Fire and Casualty Company is not waiving any term or condition of the policy of insurance.

State Farm Fire and Casualty Company expressly reserves its rights to assert all other defenses which it may have to your claim, even though not enumerated above, as they become known to the Company or as counsel may advise.

2

For these and other good and valid reasons, both known and unknown, State Farm Fire and Casualty Insurance Company respectfully denies this claim.

You will receive additional correspondence from our underwriting department regarding the policy void and refund of unearned premium, if any; from the date of loss to the date we process the policy void.

Sincerely,


Chris Johnson, CPCU
Team Manager
Enterprise SIU



**JOHN D. DOAK**
Insurance Commissioner
Oklahoma Insurance Department
5 Corporate Plaza
3625 NW 56th Street, Suite 100
Oklahoma City, OK 73112-4511

CERTIFIED MAIL

7016 2140 0000 3555 4429

NEOPOST    FIRST-CLASS MAIL
12/22/2017
US POSTAGE  $007.92⁰

ZIP 73112
041M11278941

Rec'd in Corporate Law
DEC 2 6 2017
Litigation Section B-3

22000122771ST00

**CORP HDQ E-10 00915**

ARBUCKLE,CASSANDRA
Alias : AU62
Dept# : 10080181032
Dept  : CORPORATE EXECUTIVE
Phone : 3097357728

Received in the Office
DEC 2 6 2017
of the Corporate Secretary

Pallet #: 22CORP122617122617

Carrier: #: USPS
Tracking #: 70162140000036056429
Reference #:

STATE FARM FIRE AND CASUALTY CO.
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

---ALERT INFORMATION---

Alert #:
Instructions:

---ADDITIONAL INFORMATION---

12/26/2017 9:38:35 AM

## *State Farm Review Pane Job Aid*

**Document Navigation Bar**

**Copy from Previous**: Applies the coding values from the previous document.
**Responsiveness: Required** – select one designation to indicate if the document should be numbered for production (by State Farm), Withheld from production, placed on a Privileged Log, or further reviewed.
**Responsive Privilege Type**: Required only if *Responsive-Privilege Log* is selected from the **Responsiveness** section. This section does not apply for any other designations selected from the **Responsiveness** section.
**Production Type**: Required only if *Responsive-Non-Privilege* is selected from the **Responsiveness** section. The **Production Type** should correspond with the value in the **Global Designation** field.
**GlobalDesignation** and **Footer Test** set internally by State Farm to identify and label documents requiring protection.
**Other Designations:** *Review Complete* is required for any document when a designation other than *Further Review Needed* is selected from the **Responsiveness** section.
***Needs Redaction*** – Required if a document needs redaction applied prior to production.

**Commentary**: Optional free form fields for use by either the State Farm paralegal or retained counsel.

**Placeholders:** This section will be addressed by the State Farm paralegal for any documents marked as responsiveness.
***Note:*** Before navigating to the next documents, the **Save** or **Save & Next** button must be selected in order to save the applied designations.

### *Document Review Steps Summary (Single documents)*

1. Select the appropriate Designation(s) in Review Layout
2. Select Review Complete button as an indication to your State Farm team
3. Select Save or Save & Next before navigating to the next document.

### *Redactions*

- Select the *Needs Redaction* option in the **OtherDesignations** section for any documents requiring redaction prior to production.



**From:**        MAMR SS-FORECLOSURE-NOTICES
**Sent:**        Monday, January 8, 2018 1:09 PM
**To:**          MAMR SS-FORECLOSURE-NOTICES
**Subject:**     36930X740
**Attachments:** PETITION FOR FORECLOSURE OF REAL ESTATE SALE - CENTRAL NATL. BANK V. ADA
                 ELAINE REED, SFF&CC.pdf

Electronic document capturing to file.

Please see the attached.

Thank you.

MAMR SS-FORECLOSURE-NOTICES
State Farm® Subrogation Services
Murfreesboro, TN

-----Original Message-----
From: Vicki Nettleingham
Sent: Wednesday, December 27, 2017 10:01 AM
To: MAMR SS-FORECLOSURE-NOTICES <mamr.ss-foreclosure-notices.166o11@statefarm.com>
Cc: Vicki Nettleingham <vicki.nettleingham.hqxh@statefarm.com>
Subject: 36930X740

FOR YOUR REVIEW.

THANKS!

1

# SERVICE OF PROCESS

**Questions regarding the attached Service of Process should be directed to the person/section of the Law Department checked in the bottom section below.**

The attached papers were:

    ☐ *Personally served upon:*

| | | |
|---|---|---|
| *Cassandra Arbuckle* | *June Bain* | *Rod Dierker* |
| *Kate Lyons* | *Christy Herald* | |
| *Kalene Hornsby* | *Jeanette L. Kaufman* | |

Rec'd in Corporate Law

DEC 2 6 2017

Litigation Section B-3

Or

    ☐ *Received by mail in the Office of the Corporate Secretary*

*On (date)* __12/26/17__

After receipt, the attached papers were then forwarded to one of the following sections of the **Law Department**:

    ☒ *Summons - Litigation Coordinators*

        Jason Cook (alias JOWG) 309-735-0796

        Valerie Coombs (alias HG9V) 309-763-1890

        Other_____

    ☐ *Summons (SF Bank) - Bank Section*

        Amanda Wrage (alias EGP0) 309-766-6990

        Other_____

    ☐ *Summons / Garnishment of Wages - HR/Agency & Counseling Section*

        Lisa Craghead (alias NHW8) 309-766-1936

        Other_____

    ☐ *Subpoenas - Law Department's Subpoena Intake Section*

        Renea Calvert (alias JWLP) 309-766-0973

        Other_____

**GOVERNOR**
**MARY FALLIN**



**INSURANCE COMMISSIONER**
**JOHN D. DOAK**

INSURANCE COMMISSIONER
**State of Oklahoma**

December 22, 2017

STATE FARM FIRE AND CASUALTY COMP
COMPANY
ONE STATE FARM PLAZA
BLOOMINGTON    IL  61710

RE:  CJ-17-242
     In the District Court in LEFLORE
     State of Oklahoma
     CENTRAL NATIONAL BANK
              vs
     STATE FARM FIRE AND CASUALTY COMP
     COMPANY

Dear Sir or Madam:

Enclosed is a copy of the above captioned summons
served on the Insurance Commissioner as designated agent
for service of process of foreign insurance companies doing
business in the State of Oklahoma (36 O.S. section 621(B)).

Sincerely,

JOHN DOAK
Insurance Commissioner

Sherry Standerfer          Legal Department

dp/enclosure

CORPORATION SERVICE COMPANY
10300 GREENBRIAR PLACE
OKLAHOMA CITY    OK  73159

FIVE CORPORATE PLAZA, 3625 N.W. 56ᵗʰ STREET, SUITE 100 ● OKLAHOMA CITY, OKLAHOMA 73112-4511
(405) 521-2828 ● TOLL FREE (IN STATE) 1-800-522-0071

7688

# IN THE DISTRICT COURT OF LEFLORE COUNTY
## STATE OF OKLAHOMA

RECEIVED
OKLAHOMA INSURANCE DEPARTMENT

DEC 2 2 2017

Legal Division

**CENTRAL NATIONAL BANK,**
**Plaintiff,**

-vs-

Case No. CJ-2017-242

**ADA ELAINE REED,**
**STATE FARM FIRE and CASUALTY COMPANY,**
**Defendant.**

### S U M M O N S

To the above named Defendant: State Farm Fire and Casualty Company

You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court at the above address within twenty (20) days after service of this summons upon you, exclusive of the day of service.  Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff.

Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this _18_ day of _Dec._ , 2017.

MELBA L. HALL, COURT CLERK

BY: _____
DEPUTY COURT CLERK

(SEAL)

Attorney(s) for Plaintiff(s):
Name:      Dean E. Warren
Address:   Hamilton, Warren, Bovos & Adams
           P.O. Box 660
           Poteau, OK  74953
Telephone Number:  (918) 647-9171

This summons was served on _____ .
                                    (date of service)

_____
(Signature of person serving summons)

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER.  SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.(CC1-526)

1

## CERTIFICATE OF SERVICE BY MAIL

I hereby certify that I mailed copies of the foregoing Summons with a copy of the Petition attached to the following Defendant at the address shown, by certified mail, restricted delivery to addressee only, return receipt requested, on the _____ day of _____, 20____, and the receipt thereof on the date shown:

DEFENDANT          ADDRESS WHERE SERVED          DATE RECEIPTED

STATE FARM FIRE and
CASUALTY COMPANY
                   C/o INSURANCE COMMISSIONER
                   5 Corporate Plaza
                   3625 NW 56TH Street, Suite 100
                   OKLAHOMA CITY, OK 73112-4511    _____

                                         Hamilton Warren & Bovos

                                         By:_____
                                         For the Firm

2

## IN THE DISTRICT COURT OF LEFLORE COUNTY
## STATE OF OKLAHOMA

**CENTRAL NATIONAL BANK,**
          **Plaintiff,**

-vs-
                              **Case No. CJ-2017-_____**

**ADA ELAINE REED,**
**STATE FARM FIRE and CASUALTY COMPANY,**
          **Defendant.**

### PETITION FOR FORECLOSURE OF REAL ESTATE MORTGAGE

Comes now the above named plaintiff, CENTRAL NATIONAL BANK, and for its cause of action against the defendant, ADA ELAINE REED, alleges and states as follows:

(1)    That plaintiff herein was at all times hereinafter mentioned and now is a corporation, organized and existing under the laws of the United States of America, with its principal office in Poteau, Oklahoma.

(2)    That on or about the 3RD day of July, 2016, the defendant, ADA ELAINE REED, did for a good and valuable consideration, make, execute and deliver to CENTRAL NATIONAL BANK, plaintiff herein, her written promissory note, for value received, in the principal sum of $21,255.48, plus interest thereon at the rate of 4.970% per annum until paid, said amount payable in 180 monthly payments of $167.79 each, first payment to be made on or before the 2nd day of August, 2016, and each month thereafter until fully paid and satisfied. The Note provides for late charges if the payment is more than ten (10) days late, in the amount of 5% of the unpaid portion of payment or $16.60 which ever is greater. Said note further provides for attorney fees not in excess of 15% of the unpaid debt after default.

1

A true copy of said note, with the endorsements thereon, is attached hereto, marked Exhibit "A" and made a part of this petition.

(3)    That at the same time and place and as a part and parcel of the same transaction, for the purpose of securing the payment of said promissory note, the said defendant made, executed and delivered unto the said plaintiff a certain real estate mortgage in writing, thereby granting, selling and conveying unto the said plaintiff, all the following described real estate situated in LeFlore County, Oklahoma, to-wit:

PART OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 9 NORTH, RANGE 26 EAST, INDIAN BASE AND MERIDIAN, LEFLORE COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 24; THENCE SOUTH ALONG SECTION LINE A DISTANCE OF 300 FEET; THENCE EAST 100 FEET; THENCE NORTH 300 FEET; THENCE WEST A DISTANCE OF 100 FEET TO THE POINT OF BEGINNING.

which said mortgage was duly signed and acknowledged by defendant, the required mortgage tax was duly paid, and said mortgage was duly recorded in Book 1941 at Page 318 in the Office of the County Clerk of LeFlore County, Oklahoma, a copy of which mortgage is attached hereto, marked Exhibit "B" and made a part hereof by this reference.

(4)    That by the terms and conditions of said mortgage, as fully set out therein, it is specifically provided, that if said sum or sums of money or any part thereof, or any interest thereon is not paid when the same is due, and if the taxes and assessments of every nature

2

which are or may be assessed and levied against said premises or any part thereof are not paid when the same are by law made due and payable, then the whole of said sum or sums, and the interest thereon, shall become due and payable without notice and said mortgagees shall be entitled to the immediate possession of said premises, together with all the rents, issues and profits thereof. Defendant is in default as to the note and mortgage, not having made any payments of principal or interest since November 2, 2016, although due demands have been made upon said defendant, at which time the principle due was $20,092.72. There is accrued interest from that date to December 7, 2017, in the amount of $1,113.51, late charges in the amount of $274.87 and escrow shortage in the amount of $1,533.39, for a total amount due and owing in the sum of $23,014.49.

(5)    Plaintiff further states that the conditions of said mortgage and of said note have been broken and that as of December 7, 2017, there became due and payable to plaintiff according to said mortgage and contract aforesaid, the sum of $23,014.49, with interest at the rate of 4.97% per annum, until paid; that the same has not been paid; that the plaintiff has demanded of defendant that the defendant pay the same; that said defendant has failed, refused and neglected to do so.

(6)    Plaintiff further alleges that by reason of the premises and by the default of the defendant to make payments as they matured according to said mortgage, the conditions of said mortgage have been broken and the whole amount of the indebtedness thereby secured has matured, and is now due and payable, together with all the interest thereon agreed to be

3

paid by said defendant, as well as a reasonable attorney fee and their expenses in bringing this suit, which is due and payable upon the filing of this suit as stipulated and specified in said mortgage; that therefore, plaintiff is entitled to the foreclosure of the mortgage on said premises, and to have the same sold to satisfy said indebtedness with appraisement, and the plaintiff asks that the case proceed with an appraisement.

The Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is named as Defendant herein in regard to that certain Homeowners Policy No. 36-BO-B238-8. The home burned and was a total loss in July 2016. The Plaintiff respectfully urges the Court to determine that said Defendant, STATE FARM FIRE AND CASUALTY COMPANY, must honor their policy and remit to the Plaintiff the amount sued for in regard to the property that is the subject of this action. A copy of said policy is attached hereto and made a part hereof as Exhibit "C", showing the Plaintiff as the insured mortgagee. By letter dated November 29, 2017, of the Defendant, STATE FARM FIRE AND CASUALTY COMPANY, attached hereto and made a part hereof as Exhibit "D", denied providing coverage under the policy for the loss covered by the Plaintiff's Mortgage, giving rise to this cause of action.

WHEREFORE, premises considered, plaintiff prays judgment against the defendant, ADA ELAINE REED, and the Defendant, STATE FARM FIRE AND CASUALTY COMPANY, for the sum of $23,014.49, plus interest thereon at the rate of 4.970% per annum from December 7, 2017, said interest accruing daily from that date in the sum of $3.13 until paid; for an attorney fee in the amount of $2,500.00 and for the costs of this

4

action.  In the event the Defendant STATE FARM FIRE AND CASUALTY COMPANY,

deducts the value of the real property from their coverage, Plaintiff prays for judgment

foreclosing the lien of said plaintiff upon said property, mentioned hereinabove, and forever

barring said defendant from any lien, estate, or interest in or to title thereto; and that said

mortgaged premises be ordered to be sold to satisfy the said judgment, said sale to be with

appraisement, and for such other and further relief as may be deemed proper by the court.

> HAMILTON, WARREN, BOVOS
> & ADAMS
> Attorneys for Plaintiff
> P.O. Box 660
> Poteau, OK 74953
> Phone: (918) 647-9171
> By _____
>     DEAN E. WARREN

STATE OF OKLAHOMA   )
                     ) SS.
COUNTY OF LEFLORE   )

      DEAN E. WARREN, of lawful age, after being duly sworn, states upon oath that she
has read the above and foregoing petition, and completely understands the same and the
matters and facts therein set forth are true and correct.

> _____
> DEAN E. WARREN

Subscribed and sworn to before me this 15th day of Dec , 20 17.

> _____
> NOTARY PUBLIC  #00013195

(SEAL)

My Commission Expires:

01-3-2020 .

5

3001172

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 3001172 | ADA ELAINE REED | 406368 | 07/03/15 | 446295 |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $21,255.48 | 26 Week T-Bill Rate plus 2.500% | 4.970% | 07/02/30 | Consumer |
| | | Creditor Use Only | | |

## PROMISSORY NOTE AND TRUTH-IN-LENDING DISCLOSURES
(Consumer - Closed End)

**DATE AND PARTIES.** The date of this Promissory Note and Truth-in-Lending Disclosures (Note) is July 3, 2015. The parties and their addresses are:

LENDER:
THE CENTRAL NATIONAL BANK POTEAU, INC.
802 N Pocola Boulevard
Pocola, OK 74902
Telephone: (918) 436-2471

BORROWER:
ADA ELAINE REED
2003 KARL ST
POCOLA, OK 74902-3833

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

G. **Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. FEDERAL TRUTH-IN-LENDING DISCLOSURES.**





| ANNUAL PERCENTAGE RATE<br><br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 5.301% | $9,398.72 | $20,803.48 | $30,202.20 |

## INTEREST RATE AND PAYMENT SUMMARY

| | INTRODUCTORY Rate & Monthly Payment (for first 48 months) | MAXIMUM during FIRST FIVE YEARS (07/02/2019) | MAXIMUM EVER (as early as 07/02/2028) |
|---|---|---|---|
| Interest Rate | 4.970% | 6.500% | 10.970% |
| Principal + Interest Payment | $167.79 | $181.08 | $201.04 |
| Estimated Taxes + Insurance (Escrow) | $127.08 | $127.08 | $127.08 |
| Total Estimated Monthly Payment | $294.87 | $308.16 | $328.12 |

No Guarantee to Refinance. There is no guarantee that you will be able to refinance to lower your rate and payments.

Variable Rate. My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

Security. I am giving a security interest in:

1 - 4 Family Dwelling

My deposit accounts and other rights I may have to the payment of money from you.

Filing Fees, Recording Fee - Mortgage: $25.00, Recording Fee - Releases: $16.00, City/County Tax Stamps Fee - Mortgage: $26.25.

Late Charge. If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $16.50, whichever is greater.

Required Deposit. The annual percentage rate does not take into account my required deposit.

Prepayment. If I pay off early, I will not have to pay a minimum finance charge.

Assumption. Someone buying the Property securing the obligation may, subject to conditions, be allowed to assume the remainder of the obligation on the original terms.

Contract Documents. I will see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $21,255.48 (Principal) plus interest from July 3, 2015 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 4.970 percent (Interest Rate) until July 2, 2019, after which time it may change as described in the Variable Rate subsection.

A. Post-Maturity Interest. After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

B. Maximum Interest Amount. Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. Statutory Authority. The amount assessed or collected on this Note is authorized by the Oklahoma Uniform Consumer Credit Code (14A OSA §§ 1-101 et, seq.).

D. Accrual. Interest accrues using an Actual/365 days counting method.

E. Variable Rate. The Interest Rate may change during the term of this transaction.

(1) Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the auction average of short term U.S. government bills with a 26 week maturity.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change July 2, 2019 and every 36 months thereafter.

(3) Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 2.500 percent. The result of this calculation will be rounded to the nearest .125 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Notice of Change.** You will deliver or mail to me a notice of any changes in my interest rate and the amount of my scheduled payment.

(5) **Limitations.** The interest rate changes are subject to the following limitations:

(a) **Periodic.** The interest rate will never increase or decrease on any single Change Date by more than 1.500 percent.

(b) **Lifetime.** The interest rate will never be greater than 10.970 percent or less than 4.970 percent.

(6) **Effect Of Variable Rate.** A change in the interest rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 10 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $16.50, whichever is greater. I will pay this late charge promptly but only once for each late payment.

**7. PAYMENT.** I agree to pay this Note in 180 payments. A payment of $167.79 will be due August 2, 2015, and on the 2nd day of each month thereafter. I will make 48 payments of this amount. The scheduled payment amount may then change every 36 payments thereafter. Changes in the interest rate will not affect the scheduled payment amount during these periods. With each scheduled payment change the payment amount will be adjusted to reflect changes in the interest rate during the remaining term of this Note. In addition, changes to the scheduled payment amounts are subject to changes in the interest rate as described in the Variable Rate subsection of this Note. A final payment of the entire unpaid balance of Principal and Interest will be due July 2, 2030.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and finance charges. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. RIGHT TO REFINANCE.** If any scheduled payment is more than twice as large as the average of earlier scheduled payments, I have the right to refinance the amount of such payment at the time it is due without penalty, as provided for by state law. The terms of the refinancing shall be no less favorable than the terms of the original transaction. This section does not apply if the payment schedule is adjusted because of my variable income.

**9. PAYMENT SERVICING REQUIREMENTS.** Payments can be made at any Central National Bank location in Poteau, Pocola, Panama, Heavener, or Stigler, Oklahoma, or mailed to Central National Bank, P O Box 340, Poteau, OK 74953-0340. Payments received after 2:00 p.m. (the cut-off time) will be posted the next business day.

**10. PREPAYMENT.** I may prepay this Note in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**11. LOAN PURPOSE.** This is a consumer-purpose loan transaction.

**12. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Mortgage - 2003 KARL ST, POCOLA, OK 74902-3833 | ADA ELAINE REED | July 3, 2015 |

**13. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**14. ASSUMPTIONS.** Subject to conditions and your written consent, someone buying the Property may be allowed to assume this Note. Without written consent, you may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable. An assumption fee may be assessed if I request, and you agree, to transfer some or all of the Property to another party.

ADA ELAINE REED
Oklahoma Promissory Note and Truth-In-Lending Disclosures
OK/4SKEISMAN0000000000009462056N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 
Page 3

**15. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**16. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due. This remedy is subject to my limited right to cure certain defaults and to receive any notice informing me of such a right under 46 OSA 44.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate, after providing me with the required notice and 10 days to comply.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of my right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**17. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees not in excess of 15 percent of the unpaid debt after default and referral to an attorney who is not your salaried employee. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**18. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**19. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**20. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

**B. Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

**C. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**21. APPLICABLE LAW.** This Note is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**A. Uniform Consumer Credit Code Applies.** I agree that this Loan is subject to 14A OSA § 1-101 through 14A OSA § 6-512 of the Uniform Consumer Credit Code, as amended.



**22. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**23. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or conform to any limitations of Regulations Z and X that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**24. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**25. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**26. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**27. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**28. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_Ada Elaine Reed_ _____ Date____7-3-15_____
ADA ELAINE REED

LENDER:

The Central National Bank Poteau, Inc.

By _Sherry Kelsman_ _____ Date____7-3-15_____
Sherry Kelsman, Senior Vice President

Loan origination organization Central National Bank
NMLS ID 421881
Loan originator Sherry Kelsman
NMLS ID 446296

**APPENDIX: FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid, these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

Homeowner's Insurance Reserves.  A(n) Homeowner's Insurance Reserves fee of $235.54 payable from the loan proceeds.
Property Taxes.  A(n) Property Taxes fee of $62.53 payable from the loan proceeds.
Flood Monitoring Fee.  A(n) Flood Monitoring Fee fee of $2.00 payable from the loan proceeds.
Underwriting.  A(n) Underwriting fee of $250.00 payable from the loan proceeds.
Loan Origination.  A(n) Loan Origination fee of $200.00 payable from the loan proceeds.
Recording - Releases.  A(n) Recording - Releases fee of $15.00 payable from the loan proceeds.
Recording - Mortgage.  A(n) Recording - Mortgage fee of $26.00 payable from the loan proceeds.
Pest Inspection.  A(n) Pest Inspection fee of $125.00 payable from the loan proceeds.
Flood Certification.  A(n) Flood Certification fee of $12.00 payable from the loan proceeds.
Environmental Inspection.  A(n) Environmental Inspection fee of $150.00 payable from the loan proceeds.
Credit Report.  A(n) Credit Report fee of $6.00 payable from the loan proceeds.
City/County Tax Stamps - Mortgage.  A(n) City/County Tax Stamps - Mortgage fee of $26.26 payable from the loan proceeds.
Abstracting or title report.  A(n) Abstracting or title report fee of $190.00 payable from the loan proceeds.

24-9-26

STATE OF OKLAHOMA, COUNTY OF LEFLORE - I HEREBY CERTIFY THAT
THIS INSTRUMENT WAS FILED FOR RECORD IN MY OFFICE AT POTEAU

BOOK 1941
PAGE 318        JUL - 8 2015      AT _____ O'CLOCK
                                        _____ M

KELLI FORD, COUNTY CLERK, BY _____ DEPUTY

Treasurer Endorsement
I hereby certify that I received $ 21.26
and issued receipt No. 39299 therefore in
payment of mortgage tax on the within mortgage.
Dated this ___ day of JULY 2015.
                                    SBS
                        Joe Wiles, LeFlore Co. Treas.

4818

---

Space Above This Line For Recording Data

When recorded return to Loan Department, The Central National Bank Poteau, Inc., PO Box 340, Poteau, OK 74953-0340

## MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is July 3, 2015. The parties and their addresses are:

**MORTGAGOR:**
ADA ELAINE REED
An unmarried Individual
2003 KARL ST
POCOLA, OK 74902-3833

EXHIBIT
"B"

**LENDER:**
THE CENTRAL NATIONAL BANK POTEAU, INC.
Organized and existing under the laws of Oklahoma
802 N Pocola Boulevard
Pocola, OK 74902

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor does hereby grant, bargain, convey, sell and mortgage to Lender, with the power of sale, the following described property:

PART OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 9 NORTH, RANGE 26 EAST, INDIAN BASE AND MERIDIAN, LEFLORE COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 24; THENCE SOUTH ALONG SECTION LINE A DISTANCE OF 300 FEET; THENCE EAST 100 FEET; THENCE NORTH 300 FEET; THENCE WEST A DISTANCE OF 100 FEET TO THE POINT OF BEGINNING.

The property is located in Le Flore County at 2003 KARL ST, POCOLA, Oklahoma 74902-3833.

---

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462086N

Wolters Kluwer Financial Services ©1990, 2015 Bankers Systems™

Initials _____
Page 1

BOOK 1941 PAGE 318

20/3/25

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time and from time to time will not exceed $21,255.48. Any limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, dated July 3, 2015, from Mortgagor to Lender, with a loan amount of $21,255.48 and maturing on July 2, 2030.

**B. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

**A.** To make all payments when due and to perform or comply with all covenants.

**B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

**C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. ASSUMPTIONS.** Subject to conditions and Lender's written consent, someone buying the Property may be allowed to assume this Security Instrument. Without written consent, Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS, INSPECTION, VALUATION AND APPRAISAL.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not

commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time and frequency for the purpose of inspecting, valuating, or appraising the Property. Lender will give Mortgagor notice at the time of or before an on-site inspection, valuation, or appraisal for on-going due diligence or otherwise specifying a reasonable purpose. Any inspection, valuation or appraisal of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection, valuation or appraisal for its own purpose, except as otherwise provided by law.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. DEFAULT.** Mortgagor will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the ASSUMPTIONS section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.


BOOK 1941 PAGE 320

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**13. REMEDIES.** On or after the occurrence of an Event of Default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of an Event of Default or anytime thereafter.

Lender has the power to sell the Property. If Lender invokes the power of sale, Lender will give notice in the manner required by applicable law to Mortgagor and any other persons prescribed by law. Lender will also publish the notice of sale, and the Property will be sold, as prescribed by applicable law. Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender.

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement, valuation, appraisal or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect, valuate, appraise and preserve the Property. Expenses include, but are not limited to, reasonable attorneys' fees not to exceed 15 percent of the unpaid debt after default and referral to an attorney not a salaried employee of Lender. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462050N
Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 
Page 4

BOOK 1941 PAGE 321

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and will remain in full compliance with any applicable Environmental Law.

C. Mortgagor will immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**16. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**17. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld. All insurance policies and renewals shall include a standard "mortgage clause" (or "lender loss payable clause") endorsement that names Lender as "mortgagee" and "loss payee". If required by Lender, all insurance policies and renewals will also include an "additional insured" endorsement that names Lender as an "additional insured". If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**18. ESCROW FOR TAXES AND INSURANCE.** As provided in a separate agreement, Mortgagor agrees to pay to Lender funds for taxes and insurance in escrow.

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462056N

Wolters Kluwer Financial Services ©1996, 2016 Bankers Systems™

Initials 
Page 6

BOOK 1941 PAGE 322

**19. WAIVER OF APPRAISEMENT.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

**20. APPLICABLE LAW.** This Security Instrument is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**21. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**22. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**23. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**24. NOTICE, ADDITIONAL DOCUMENTS AND RECORDING FEES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any other, correct and complete information Lender requests to effectively mortgage or convey the Property. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

NOTICE TO MORTGAGOR: A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462055N

Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™

Initials 
Page 6

BOOK 1941 PAGE 323

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

_Ada Elaine Reed_          Date _7-3-15_
ADA ELAINE REED

**ACKNOWLEDGMENT.**

STATE OF OKLAHOMA, COUNTY OF LEFLORE   ss.

This instrument was acknowledged before me this 3rd day of July 2015 by ADA ELAINE REED , an unmarried individual.

My commission expires: 05-12-2018
Commission number: 14004467          _Christina Thomas_
                                                      (Notary Public)
                                                      X X

NOTARY PUBLIC State of OK
CHRISTINA THOMAS
Comm. # 14004467
Expires 05-12-2018

Loan origination organization Central National Bank
NMLS ID 421681
Loan originator Sherry Keisman
NMLS ID 446295

ADA ELAINE REED
Oklahoma Mortgage
OK/4SKEISMAN00000000009462056N          Wolters Kluwer Financial Services ©1996, 2015 Bankers Systems™          Initials ____
Page 7

BOOK **1941** PAGE **324**

**State Farm**

**State Farm Fire and Casualty Company**
A Stock Company With Home Offices in Bloomington, Illinois

4700 South Providence
Columbia, MO 65217-0001

**Mortgagee**

AT1          000879  0046          O-26-9BBE-FB5B          H  F

CENTRAL NATIONAL BANK
PO BOX 340
POTEAU OK  74953-0340

## DECLARATIONS PAGE

| Policy Number | 35-B0-B238-9 |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | JUL 9 2015 | JUL 9 2016 |

The policy period begins and ends at 12:01 am
standard time at the residence premises.

Loan # 3001172
Named Insured

REED, ELAINE
2003 KARL ST
POCOLA OK  74902-3833

*3001172*

## HOMEOWNERS POLICY

**Automatic Renewal** - If the policy period is shown as 12 months, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

Location of Residence Premises
Same as Insured's Address

| Coverages & Property | | Limits of Liability | | Inflation Coverage Index: 208.9 | |
|---|---|---|---|---|---|
| | **SECTION I** | | | **Deductibles - Section I** | |
| A | Dwelling | $ | 66,000 | All Losses      1% | $1,000 MIN |
| | Dwelling Extension    up to | $ | 6,600 | | |
| B | Personal Property | $ | 49,500 | | |
| C | Loss of Use | | Actual Loss Sustained | | |
| | **SECTION II** | | | | |
| L | Personal Liability | $ | 100,000 | | |
| | (Each Occurrence) | | | In case of loss under this policy, the deductibles will be applied | |
| | Damage to Property | $ | 500 | per occurrence and will be deducted from the amount of the | |
| | of Others | | | loss. Other deductibles may apply - refer to policy. | |
| M | Medical Payments to | $ | 1,000 | | |
| | Others (Each Person) | | | | |

| Loss Settlement Provision (See Policy) | Policy Premium | $ | 1,497.00 |
|---|---|---|---|
| A1 Replacement Cost - Similar Construction | Discount Applied: | | |
| B1 Limited Replacement Cost - Coverage B | Home/Auto | | |

**Forms, Options, & Endorsements**
Homeowners Policy                                    FP-7945
Homeowners Policy Endorsement              FE-3512
Amendatory Endorsement                          FE-2340
Jewelry and Furs $1,500 Each                    Option JF
   Article/$2,500 Aggregate
Increase Dwlg Up to $  13,200                   Option ID
Ordinance/Law  10%/$  6,600                    Option OL

**EXHIBIT**
"C"

Other limits and exclusions may apply - refer to your policy

Your policy consists of this page, any endorsements
and the policy form. Please keep these together.

FP-7011C          DEC PAGE ONLY  Continued on Reverse

2699    161 M

1  N          Prepared    JUL 16 2015

RANDY BITTLE
479-452-4088

555-7020          555-7020.1  Rev 10-2002 (n1010fm)

CONTINUED FROM FRONT SIDE

*Note: For your protection, the law of your state requires the following to appear on this form:* **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

(c1g2170b)

01I0306g
Rev. 06-2006

From:McBee Law Firm                9186472360              12/06/2017 09:05      #588 P.002/006



State Farm Mutual Automobile Insurance Company

November 29, 2017

                                        State Farm Insurance Companies
                                        PO BOX 52258
                                        Phoenix AZ 85072-2258

Elaine Reed
c/o McBee Law Firm
211 N. Church Street
Poteau, OK 74953

Re:    Insured:          Elaine Reed
       Claim Number:     36-930X-740
       Date of Loss:     July 24, 2016

Dear Ms. Reed:

State Farm Fire and Casualty Company has completed its review of your claim. We have concluded, after reviewing your Examinations Under Oath, documents submitted and other information obtained during the course of our investigation there is no coverage for your loss of July 24, 2016. Accordingly, we are denying your claim. We are also declaring your policy void as of the date of loss.

This denial of liability and voidance of your policy are predicated upon the violation of policy terms and conditions. The policy provisions in pertinent part are:

**POLICY LANGUAGE:**

    Coverage for the dwelling is provided under Homeowners Policy Form 7945.

    The pertinent policy language includes:

<div align="center">

**DECLARATIONS CONTINUED**

</div>

    We agree to provide the insurance described in this policy:

<div align="center">* * *</div>

    2. Based on your compliance with all applicable provisions of this policy; and

    3. In reliance on your statements in these Declarations.

<div align="center">* * *</div>



                                        Home Office, Bloomington, IL

### SECTION I – LOSSES INSURED

**COVERAGE A - DWELLING**
We insure for accidental direct physical loss to the property described in coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

**COVERAGE B - PERSONAL PROPERTY**
We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

1.  Fire or lightning.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

### SECTION I AND SECTION II – CONDITIONS

3.  **Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

There is no coverage under this policy of insurance for the following reasons:

1.  The fire damage to the insured property was not the result of an accidental direct physical loss for which the policy provides coverage.
2.  You or some person insured under this policy intentionally caused the fire for the purpose of obtaining insurance benefits.
3.  Your intentional misrepresentation and concealment as to the material facts and circumstances surrounding the loss;
4.  Your intentional misrepresentation and concealment of information in the presentation of your claim including but not limited to your Sworn Statement in Proof of Loss.
5.  Your intentional misrepresentation and concealment of the known cause of the fire.

By denying your claim and voiding your policy on the grounds set forth above, State Farm Fire and Casualty Company is not waiving any term or condition of the policy of Insurance.

State Farm Fire and Casualty Company expressly reserves its rights to assert all other defenses which it may have to your claim, even though not enumerated above, as they become known to the Company or as counsel may advise.

2

For these and other good and valid reasons, both known and unknown, State Farm Fire and Casualty Insurance Company respectfully denies this claim.

You will receive additional correspondence from our underwriting department regarding the policy void and refund of unearned premium, if any; from the date of loss to the date we process the policy void.

Sincerely,


Chris Johnson, CPCU
Team Manager
Enterprise SIU

3



CERTIFIED MAIL



**JOHN D. DOAK**
**Insurance Commissioner**
Oklahoma Insurance Department
5 Corporate Plaza
3625 NW 56th Street, Suite 100
Oklahoma City, OK 73112-4511

7016 2140 0000 3555 4429



NEOPOST          FIRST-CLASS MAIL
12/22/2017
US POSTAGE   $007.92⁰

ZIP 73112
041M11276941

Rec'd in Corporate Law
DEC 2 6 2017
Litigation Section B-3



22000122771ST00

**CORP HDQ E-10 00915**

ARBUCKLE,CASSANDRA
Alias : AU62
Dept# : 10080181032
Dept   : CORPORATE EXECUTIVE
Phone : 3097357728

Received in the Office
DEC 2 6 2017
of the Corporate Secretary

Pallet #: 22CORP122617122617
Carrier: #: USPS
Tracking #: 70162140000036556429
Reference #:

STATE FARM FIRE AND CASUALTY CO.
ONE STATE FARM PLAZA
BLOOMINGTON, IL 61710

---ALERT INFORMATION---

Alert #:
Instructions:

---ADDITIONAL INFORMATION---

12/26/2017 9:38:35 AM